IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-CV-00427-MSK-MJW
JOHN P. CRESPIN, III,

       Plaintiff,

v.

DENVER POLICE OFFICERS STEVEN CASTRO,
TODD E. ALLUM,
ERIC J. Sellers,
JOEY GASCA, and
CITY AND COUNTY OF DENVER,

       Defendants.

---

**ORDER GRANTING, IN PART, MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment **(#34)**, to which Plaintiff John P. Crespin responded **(#35)**, and the Defendants replied **(#36)**. Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### II. Issues Presented

This case arises out of a traffic stop during which Mr. Crespin was allegedly detained, physically restrained and beaten, and then arrested by the Defendant police officers. He asserts that the officers' actions amounted to an unconstitutional search and seizure, the use of excessive force, and a denial of his right to due process. He asserts four claims:[1] Claim 1 is a *Monell* claim

---

[1] The Amended Complaint **(#30)** asserts seven claims for relief. At a Rule 16 Conference on June 10, 2010 **(#42)**, Mr. Crespin conceded that Claims 4, 5, and 6 were

against the City and County of Denver ("Denver") for unreasonable search and seizure and use of excessive force; Claim 2 is a Fourth Amendment unreasonable seizure (arrest without probable cause) claim against all of the individual defendants; Claim 3 is an excessive force claim against Officers Allum, Sellers, and Castro; and Claim 7 asserts that Officer Gasca, although not having personally engaged in the application of excessive force against the Plaintiff, is nevertheless liable for the other officers' constitutional deprivations between he knew of the constitutional deprivation that was occurring yet failed to intercede to halt it.

As a result of the narrowing of the claims on June 10, 2010, the Motion for Summary Judgment attacks only Claims 1 and 7.[2] Specifically, the Defendants argue that Mr. Crespin cannot show that: (1) a policy or custom of Denver's caused the alleged constitutional violations at issue or (2) Officer Gasca actually witnessed the constitutional violations thereby subjecting him to a duty to intervene. Mr. Crespin responds that a pattern of complaints regarding excessive force and failure to properly follow procedure against the officers in question demonstrates a genuine issue of fact as to whether Denver's failure to train and supervise the officers was the moving force behind the violation, and further responds that Officer Gasca's own report of the incident indicates that he witnessed the physical altercation between Mr. Crespin and the other officers.

### III. Material Facts

The following recitation addresses those facts that are undisputed or, where facts are

---

redundant, and the Court dismissed those claims.

[2] The Motion for Summary Judgment also attacked aspects of Claims 4, 5, and 6, but the dismissal of those claims renders those portions of the Motion for Summary Judgment moot.

disputed, construes the facts in the light most favorable to Mr. Crespin.

On January 20, 2009, Officers Castro and Allum pulled over a vehicle driven by Mr. Crespin. Mr. Crespin's girlfriend, Angelina Castro, and their young child were passengers. After requesting identification from both Mr. Crespin and Ms. Castro, Officers Castro and Allum discovered that there was an outstanding warrant for Ms. Castro. The officers arrested Ms. Castro and placed her in a police vehicle.

The officers then returned to Mr. Crespin's vehicle. They requested that Mr. Crespin exit the vehicle so they could search it. There appears to be no dispute among the parties that, upon exiting the vehicle, Mr. Crespin became involved in a physical altercation with Officers Castro and Allum. However, the factual record is surprisingly scant with regard to how that altercation began and what transpired during that altercation. The Defendants have submitted portions of Mr. Crespin's deposition, in which Mr. Crespin describes attempting to exit the vehicle, while Officer Castro "rushed in" to begin searching it. Mr. Crespin states that he "brush[ed] shoulders" with Officer Castro as he exited the car and Officer Castro entered, at which point Mr. Crespin asked "Do you want me sitting down or do you want me to lean up against the car or what?" Mr. Crespin testified that Officer Castro then "ripped my chain off my neck and threw it in the alley." This particular deposition excerpt ends here, without describing any further events. With one exception, in which a later excerpt includes Mr. Crespin mentioning Officer Sellers "leaning on my chest with his hand, and the whole time he's striking me with one hand," the remaining evidence submitted by the Defendants reveals no additional facts about the altercation itself.

Mr. Crespin's response to the motion does not materially supplement the Defendants'

3

evidentiary submission. Only one of the exhibits submitted by Mr. Crespin purports to address the events of the altercation, and that exhibit's contents are curious. The tendered exhibit is a fragment – only page 2 is supplied – from an unidentified report by an unidentified author,[3] written at an unknown date after the altercation. The fragment of the report contains what appear to be narratives of the events, given by each of Officers Allum, Sellers, and Gasca. The provenance of the narratives attributed to Officers Allum and Sellers are unclear, as neither narrative purports to identify how the author came to be supplied with that information. The narrative attributed to Officers Gasca indicates that Officer Gasca "related that he observed" various events, but it is not necessarily clear that Office Gasca "related" that information directly to the report's author, or whether he "related" that information to another person, who in turn provided it to the report's author.

The Court declines to treat the contents of the report fragment as factual material to be considered in the summary judgment analysis. A party opposing summary judgment is not required to come forward with evidence in a form that would be admissible at trial, but the content or the substance of the evidence presented must be admissible. *Adams v. American Guarantee and Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). Thus, "a third-party's description of a witness supposed testimony is not suitable grist for the summary judgment mill." *Id.* Here, the report itself is plainly hearsay – a statement made out of court, offered to prove that the matters set forth therein are true. Fed. R. Evid. 801(c), 802. As such, its contents – the

---

[3] The author of the report was apparently at the scene of the altercation, as he states that he "conducted a video interview at the scene with [Mr. Crespin]" and that he "stayed with the agitated family [the altercation apparently occurring in the vicinity of Mr. Crespin's house and partially witnessed by Mr. Crespin's family] attempting to calm them down."

4

"substance of the evidence" – would not be admissible at trial, and thus, it is not properly considered by the Court on summary judgment.[4] As a result, the record before the Court reveals that the entirety of the "altercation" consisted of Mr. Crespin "brushing shoulders" with Officer Castro, Officer Castro then "ripping the chain" off Mr. Crespin's neck, and Officer Sellers "striking [Mr. Crespin] with one hand."

As a result of the altercation, Mr. Crespin was arrested and charged with, among other things, second degree assault against Officers Sellers and Allum.

### IV. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby

---

[4] One might attempt to construct a chain of various hearsay exceptions to bring the report out of the shadows of the hearsay rule, but the limited facts in the record would not appear to support any such exceptions.

5

favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

When the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

When the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## V.  Analysis

### A.  Claim 1: *Monell* Claim Against Denver

Claim 1 asserts that Denver was responsible for the alleged constitutional violations perpetrated against Mr. Crespin by the individual officers under *Monell* theory of liability. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Generally, a municipality is not

6

vicariously liable under § 1983 based solely on the actions of its employees; however, when an official municipal policy or custom causes or contributes to the constitutional deprivation, the municipality may itself have liability for the deprivation. *See id.*; *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009). Accordingly, to state a claim against a municipality under § 1983, a plaintiff must demonstrate two elements: (1) a municipal employee committed a constitutional violation; and (2) a municipal policy or custom was the moving force behind the constitutional deprivation, *i.e.*, there must be a direct causal link between the policy or custom and the injury. *See Monell*, 436 U.S. at 694; *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). Here, Denver challenges Mr. Crespin's ability to demonstrate the second element.

Mr. Crespin contends, and for purposes of this analysis, the Court assumes, that a Denver police officer violated his constitutional rights by using excessive force against him. He further contends that the use of excessive force was a result of Denver's failure to properly train the officers in the use of force, failure to properly supervise the officers, and failure to adequately screen Officer Allum prior to hiring him.[5]

A municipal policy or custom of failing to properly to train or supervise police officers may, if such failure amounts to a deliberate indifference to the rights of those with whom the police come into contact, give rise to municipal liability under *Monell*. *See City of Canton v.*

---

[5] Mr. Crespin's Complaint **(#30)** included two *Monell* claims against Denver, one based generically on Denver's "policies, customs, and usages" and another based on Denver's failure to train or supervise. These two claims were merged into a single *Monell* claim at the Rule 16 Conference. The theories of failure to train and failure to supervise are addressed *infra*. To the extent that Mr. Crespin also asserts a *Monell* claim for a policy or custom that is not incorporated in these theories, he has not identified any specific policy or custom that lead to the constitutional deprivation at issue in this case. Accordingly, as to this type of claim, he has not demonstrated his *prima facie* case and summary judgment in favor of Denver is appropriate.

*Harris*, 489 U.S. 378, 389–90 (10th Cir. 1989); *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007). To establish a claim for failure to train police officers against the use of excessive force, a plaintiff is required to show that (i) the training given regarding use of force was, in fact, inadequate; (ii) the officers exceeded constitutional limitations on the use of force; (iii) the use of force arose under circumstances that constitute a usual and recurring situation confronting police officers; (iv) the inadequate training demonstrates a deliberate indifference by the municipality as to the rights of the people with whom the police come into contact; and (v) there is a direct causal link between the constitutional deprivation and the inadequate training. *See Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000). The deliberate indifference standard may be satisfied by evidence that the municipality had actual or constructive notice that its action or failure was substantially certain to result in a constitutional violation, and it consciously and deliberately choose to disregard the risk of harm. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002). Generally, notice is demonstrated by showing a pattern of conduct. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998). In limited circumstances, however, deliberate indifference can be found absent a pattern of conduct, if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction. *See id.*

In this case, Mr. Crespin contends that Denver is liable for the excessive force used against him because it failed to "remedy or properly investigate" prior claims of excessive force against the officers involved in his alleged assault. The Court understands this argument to be one for inadequate training, *i.e.*, that the prior complains indicated to Denver that the officers had not been properly trained regarding the use of force, and that Denver failed to remedy that

8

defective training, leaving officer unequipped to confront the situation with Mr. Crespin without resorting to the unconstitutional use of force. With respect to this claim, Denver contests Mr. Crespin's ability to demonstrate that it's training on the use of force was inadequate (element 1); that it acted with deliberate indifference to the rights of the people with whom its officers come into contact (element 4); and that there is a direct causal link between the failure to train and the constitutional deprivation at issue (element 5).[6]

In support of his claim, Mr. Crespin presents four items of evidence: (i) "formal complaint summaries" for each of the individual officers, as derived from the police department's Internal Affairs Bureau; (ii) incident reports from three separate events in 2004 in which Officer Gasca used force against a suspect; (iii) a 2000 memorandum from a police department trainer, regarding an investigation into a complaint that Officer Allum, then a Denver police trainee, made comments while employed by the Arapahoe County Sheriff's Department that he "may have been involved in a cover-up" of a police shooting "several years ago" (the memorandum noted that Arapahoe County "found no cause to take disciplinary action regarding this allegation" and that the Denver police trainer did not believe this allegation warranted removing Officer Allum from the training program); and (iv) a "three year other-than-sustained complaint history" involving Officer Allum, which recites three instances in which complaints were lodged against Officer Allum.[7] Additionally, Mr. Crespin recites a Colorado statute,

---

[6] For purposes of this Motion, however, Denver does not contest Mr. Crespin's ability to demonstrate a triable issue as to the other two elements of a failure to train claim—whether the use of force was a constitutional violation and whether it occurred in the course of a usual and recurring situation confronting police officers.

[7] Of the three incidents listed, one involved Officer Allum not completing certain required training hours, one involved Officer Allum allegedly violating policies regarding

9

which is repeated in the Denver Operations Manual, providing that

> a peace officer is justified in using reasonable and appropriate physical force upon another person when and to the extent that he reasonably believes it necessary: (a) To effect an arrest or to prevent the escape from custody of an arrested person unless he knows that the arrest is unauthorized; or (b) To defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force while effecting or attempting to effect such an arrest or while preventing or attempting to prevent such an escape.

*See* Colo. Rev. Stat. § 18-1-707(1).

The Court turns first to whether Mr. Crespin has established that Denver's training was inadequate. Mr. Crespin has not submitted any evidence that describes, much less purports to identify defects in, the actual training Denver provides to its officers regarding the use of force. Mr. Crespin appears to assume that evidence regarding the number (and, with respect to Officers Allum and Gasca, some evidence of the contents of) complaints against the officers is, of itself, sufficient to show inadequate training. Where a municipality demonstrably fails to respond to previous complaints of constitutional violations, a factfinder may infer that the municipality has demonstrated deliberate indifference to the fact that its training is likely inadequate. *See, e.g.*, *Milligan v. U.S.,* 644 F.Supp.2d 1020, 1040 (M.D. Tenn. 2009). It is not merely the fact that complaints were made that gives rise to this inference; it is the municipality's failure to adequately respond to or investigate the complaints, or its failure to act in response to established instances of unconstitutional conduct that gives rise to liability. *See, e.g.*, *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).

Here, with regard to Officers Castro and Sellers, Mr. Crespin has done nothing more than

---

Emergency Operation of Police Vehicles, leading to an accident, and the final complaint involved an allegation of excessive force by Officer Allum in effecting an arrest in 2002, but Internal Affairs ultimately concluded that complaint was "unfounded."

establish that complaints have been filed against them.[8] Mr. Crespin has not come forward with evidence that demonstrates that Denver ignored these complaints or failed to reasonably investigate and resolve them. He simply assumes that the number of complaints alone – even complaints that were investigated and found to be without merit – can give rise to an inference of inadequate training. He cites no authority for this flawed proposition, and in the absence of such authority, the Court is not inclined to agree. With regard to Officers Gasca and Allum, Mr. Crespin's submission of simple complaint totals is only slightly augmented by incident reports describing the events underlying certain complaints.[9] Once again, however, the records themselves indicate that Internal Affairs investigations into the complaints concluded that the accusations were unfounded, and Mr. Crespin has not come forward with evidence that would challenge those conclusions or otherwise demonstrate that Denver ignored or reflexively disregarded such complaints.[10]

---

[8] The report for Officer Castro does not identify any complaints were "sustained" or otherwise formally found to be meritorious. The report for Officer Sellers deems several complaints to be "sustained," although those all involved "improper procedure - preventable accident" or "[dis]obedience to traffic regulations." One complaint of "inappropriate force," occurring on December 28, 2008, less than a month before the events at issue here, is listed as "not dispositioned yet."

[9] Curiously, of the three incident reports describing Officer Gasca's use of force, only one – the incident occurring on August 17, 2004 – is listed on the log of complaints for Officer Gasca. (Officer Gasca was "exonerated" as a result of the Internal Affairs investigation into that complaint.) The Court can only assume that, in the two other incidents in which Officer Gasca used force, no one complained that that use of force was excessive.

[10] Mr. Crespin appears to rely on the fact of his own assault as evidence that Denver failed to adequately train its officers. The Supreme Court has made clear that a single incidence of unconstitutional behavior is not sufficient to establish a prevailing policy or custom sufficient to hold the municipality liable for the conduct of its employees. *See City of Canton*, 489 U.S. at 391 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Accordingly, the Court finds that Mr. Crespin has failed to come forward with facts sufficient to demonstrate that Denver's policies resulted in inadequate training of police officers regarding the use of force

Similar to a failure to train theory, a *Monell* claim may be based on a failure to supervise, as long as the failure results from deliberate indifference. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010). Just as Mr. Crespin did not come forth with any specifics as to inadequacies in Denver's training program (or lack thereof), Mr. Crespin has also failed to identify or articulate any specific failure by Denver in the supervision of its officers. The basis for Mr. Crespin's failure to supervise claim appears to be that the officers were not disciplined or terminated based on their past history of using unnecessary force. However, for the same reasons discussed *supra*, Mr. Crespin has established only that complaints were lodged against each of the officers, but he has not shown that those complaints were ignored, inadequately investigated, or found to have merit, such that Denver could be said to have overlooked or ignored instances of prior unconstitutional conduct. Without such proof, Mr. Crespin has not shown that the supervision afforded each of the Defendants was inadequate.

Finally, Mr. Crespin appears to allege that Denver is liable for failing to adequately screen its applicants for police jobs, pointing to concerns raised about Officer Allum during training. Municipal liability under a *Monell* theory may also be based on a failure to adequately screen an employee prior to hiring, if the hiring decision was made with deliberate indifference. *See Bd. of the County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 412 (1997); *Barney*, 143 F.3d at 1308. However, because the danger of holding the municipality liable on

only a *respondeat superior* theory is great, there must be a strong connection between the background of the particular officer and the specific constitutional violation. *Id.* Less than careful screening of an applicant, alone, is not sufficient; the plaintiff also must show that the particular officer was highly likely to inflict the particular injury suffered by the plaintiff. *Id.*

As to this theory, Mr. Crespin argues that Denver failed to adequately screen Officer Allum prior to hiring him because it hired him without properly investigating an allegation that Officer Allum claimed to have previously engaged in a "cover-up" of a police shooting. To demonstrate the failure to investigate, Mr. Crespin submits an internal affairs report detailing the investigation that Denver undertook prior to hiring Officer Allum. Paradoxically, Mr. Crespin's submission of this report as proof that Denver did not investigate the issue has precisely the opposite effect: the document makes clear that Denver's trainers thoroughly investigated the circumstances of Officer Allum's prior employment and the nature of the allegation, ultimately concluding that the accusation was without merit. Moreover, Mr. Crespin has not presented any evidence, or even argument, demonstrating that the accusation against Officer Allum – at worst, that he engaged in a cover-up of a police shooting – has any connection to Officer Allum's use of excessive force against Mr. Crespin.

Accordingly, Denver is entitled to summary judgment on Mr. Crespin's *Monell* claim in all respects.

### B. Claim 7: Failure to Intervene Against Officer Gasca

Claim 7 alleges that Officer Gasca violated Mr. Crespin's Fourth Amendment rights when he saw that the other officers were using excessive force against Mr. Crespin and failed to intervene to stop the constitutional violation.

Liability under § 1983 requires personal participation in the constitutional violation. *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). This does not mean, however, that an officer must physically contact a plaintiff be liable for the use of excessive force. An officer can be liable for use of excessive force under § 1983 if he or she fails to intervene to prevent a fellow officer's use of such force. *See Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008). However, in such circumstances, the officer must have witnessed the use of excessive force, had a realistic opportunity to intervene to end it, and failed to do so. *See Wallin v. Dycus*, 2010 WL 2232264, at *4 (10th Cir. Jun. 3, 2010) (unpublished) (quoting *Fillmore v. Page*, 358 F.3d 496, 505–06 (7th Cir.2004)).

Here, Officer Gasca argues that Mr. Crespin has not come forward with facts sufficient to show that Officer Gasca indeed observed conduct that could be deemed to be the application of excessive force. As the factual discussion above indicates, the scant evidentiary record regarding the circumstances of the altercation do not demonstrate that Officer Gasca was present during the altercation, or establish that Officer Gasca observed conduct by his fellow officers that would constitute the application of excessive force. For this reason, Officer Gasca is entitled to summary judgment on Claim 7.

Even if the Court were to overlook the evidentiary problems attendant to Mr. Crespin's tender of the fragment of the report by the unidentified author, the result would be the same. That report recites that "Officer Joey Gasca related that he observed the suspect fighting with the officers by violently flailing his arms striking Officer Allum in his torso. He heard Crespin repeatedly state "Fuck you mother fucker" as he was fighting with the officers." The report does not indicate that Officer Gasca observed any of his fellow officers striking Mr. Crespin, but only

14

that he observed Mr. Crespin striking the officers. This is not sufficient to create a genuine issue of fact as to whether Officer Gasca saw conduct by his fellow officers that created a duty on Officer Gasca to intervene. Consequently, Officer Gasca is entitled to summary judgment on Claim 7.

**IT IS THEREFORE ORDERED** that

(1) Defendants' Motion for Summary Judgment **(#34)** is **GRANTED IN PART** insofar as Denver is entitled to judgment in its favor on Claim 1, and Officer Gasca is entitled to judgment in his favor on Claim 7.

(2) Claims 2 and 3, against the individual officers in their individual capacities remain pending.

Dated this 30th day of September, 2010

BY THE COURT:

Marcia S. Krieger
United States District Judge